

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

March 19, 2021

**BY EMAIL AND ECF**

The Honorable Judith C. McCarthy
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Dezon Washington, a/k/a "Blakk," 20-cr-626 (PMH)*

Dear Judge McCarthy:

      The Government respectfully submits this letter in opposition to defendant Dezon Washington's motion for pretrial release. For the reasons set forth below, the Government agrees with the recommendation of Pretrial Services that detention pending trial is warranted in this case.

**I.    Applicable Law**

      The Government's initial detention memorandum, attached and incorporated as Exhibit A, sets forth the governing standards. As set forth in that memorandum, this is a case where there is a statutory presumption of detention because the defendant is charged with both a controlled substance offense punishable by at least 10 years imprisonment and offenses under 18 U.S.C. § 924(c), which requires in this case requires an additional 12 years imprisonment to be imposed consecutive to any other sentence imposed. 18 U.S.C. § 3142(e)(3)(A), (B). Thus, the defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

**II.    The Defendant Cannot Rebut the Presumption of Dangerousness**

      As the Government noted in its initial detention memorandum, the defendant is a violent member of Gorilla Stone who assisted in managing the flow of firearms for a Bloods gang committed to violence.

*The Defendant's Role In Handling Firearms for Gorilla Stone*

      In addition to participating in the gang's large-scale narcotics trafficking operation, the defendant played a significant and even more dangerous role in procuring, and moving, firearms for fellow members of Gorilla Stone.

In a telling conversation, intercepted over co-defendant Naya Austin's cellphone pursuant to a Court-authorized wiretap on June 29, Austin—a more senior member of Gorilla Stone—requests the defendant's assistance in procuring a firearm ("duffle"):

> AUSTIN: Big facts, n*ggas need a whole different duffle all that too
> WASHINGTON: Huh
> AUSTIN: I said n*ggas need a whole different duffle all that too
> WASHINGTON: Hell yeah um bro just hit me and said there's one floating around for 6 [$600] right now
> AUSTIN: Word
> WASHINGTON: Yeah Chino [co-defendant Stephen Hugh]
> AUSTIN: O he probably trying to get rid of his
> WASHINGTON: O word
> AUSTIN: Is he…
> WASHINGTON: He ain't make it, he ain't make it sound like that he just made it sound like it was floating around like…
> AUSTIN: O ok, ok
> WASHINGTON: So when I get to the crib I'm gonna call facetime the n*gga he told me to Facetime him so
> AUSTIN: Yeah see if he could get that shit down to like 4 [$400] or something we could do something
> WASHINGTON: Aight bet.
> AUSTIN: That that over 4 [$400],5 [$500] shit crazy
> WASHINGTON: Yeah, that shit be crazy that that New York prices

Perhaps the most worrying part of the conversation is the defendant's fluency in gun prices and comfort with trafficking firearms. In fact, there seems to be more evidence that this was the defendant's role in Gorilla Stone. In the below image, sent from co-defendant Austin to co-defendant Roberta Sligh, Austin appears to have screenshotted an image of a conversation with the defendant (saved in her phone as "Blvk") in which the defendant appears to be showcasing certain firearms he could purchase.[1]

---

[1] Law enforcement confirmed the defendant was saved in Austin's phone as "Blvk" through a review of Austin's phone conducted pursuant to a court-authorized warrant. The defendant is able to legally purchase firearms because he has not sustained a felony conviction to date.

March 19, 2021
Page 3 of 10



The defendant's role as a firearms procurement specialist for Gorilla Stone—an organization committed to violence, *see* Ex. A at 2-3—alone demonstrates the danger the defendant poses to the community.

*The Defendant's Direct Involvement in Violence*

Punctuating the danger the defendant poses to the community is his personal participation in acts of gang violence. As charged in Counts 5 and 6 of the Indictment (S3 20-cr-626 (PMH)), the defendant participated in a brazen gunpoint drug robbery of a rival Crips gang member at a motel in Peekskill, New York. Indeed, evidence from the savage beating was left at the crime scene:

March 19, 2021
Page 4 of 10



▇▇▇▇▇▇▇▇▇▇▇▇▇▇ surveillance also corroborates the victim's identification. An individual who shares a similar build with the defendant is seen on video surveillance just outside the room where the victim was staying in the immediate aftermath of the robbery, as depicted below:



What makes the surveillance truly compelling, however, are the clothing matches found on the defendant's public Instagram page. Below are stills from video surveillance, including one of the defendant as he exits the victim's room right after the robbery. Of particular note are his Jordan sneakers with unique indents on their sides and pants with a wide vertical white stripe.





The defendant donned what appears to be the same pants in a photo he posted to Instagram with co-defendants Austin and Jordan Ingram—the individuals he committed the robbery with—just nine days before the June 11 robbery.



And in earlier Instagram posts, the defendant is seen wearing the same distinctive Jordan sneakers with unique indents.





In sum, there is compelling evidence that the defendant participated in a brutal gunpoint robbery of a rival drug dealer with fellow Gorilla Stone members. *Cf. Mercedes*, 254 F.3d at 438 (finding that the fact the defendant was "at the appointed place and time of the robbery" to be "significant evidence" weighing in favor of detention). Add that to the defendant's role as a procurer of firearms for an ultra violent street gang—a role he could immediately reprise with a phone while on pretrial release—and the danger he poses to the community becomes abundantly clear.

### III. The Defendant Is A Risk of Flight

Pretrial Services also found the defendant to be a risk of flight and the Government agrees.

The defendant here faces a mandatory minimum sentence of twenty-two years in prison and a statutory maximum of life on a case built on incredibly strong evidence, including wiretaps, controlled buys, surveillance, and seized electronically stored information. Not only that, the defendant has never done a sentence close to even the mandatory minimum in this case. His longest sentence appears to have been a six month sentence for absconding from probation. That history, in tandem with the strength of the evidence and penalties here, creates a powerful incentive to flee. *See United States v. Williams*, 654 F. App'x 3, 4 (2d Cir. 2016) (summary order) (affirming district court order of detention where the district court found, among other things, "the strength of the evidence against [the defendant] coupled with the significant sentence [the defendant] potentially faced" created a risk of flight).

As Pretrial Services notes, the defendant has also absconded from Probation and has had multiple bench warrants issued from prior cases. There is no reason to think that, if released, the defendant will comply with Court orders and the directives of Pretrial Services. He has demonstrated he would do just the opposite.

V.      **Conclusion**

       For the reasons stated above, the Court should detain the defendant pending trial, as recommended by Pretrial Services.

       Respectfully submitted,

       AUDREY STRAUSS
       United States Attorney

By: /s/
       Shiva H. Logarajah
       Jacob Warren
       David R. Felton
       Adam Hobson
       Assistant United States Attorneys
       Southern District of New York
       (914) 993-1918/(212) 637-2264/(914) 993-1908/(212) 637-2484

cc:     All Counsel of Record (by ECF)
       Pretrial Services (by email)