**RICHARD PALMA**
ATTORNEY AT LAW
225 BROADWAY
NEW YORK,

**MEMBER OF THE BAR**
**NEW YORK**

> Application granted. Counsel's appointment is broadened to encompass the 28 U.S.C. 2255 motion contemplated on the grounds that the interests of justice so require such representation under 18 U.S.C. 3006A(a)(2)(B). The briefing schedule established in the Court's November 23, 2022 Order shall be applicable to any such section 2255 motion.
>
> SO ORDERED.
>
> *[signature]*
>
> Philip M. Halpern
> United States District Judge
>
> Dated: White Plains, New York
> December 7, 2022

The Honorable Philip M. Halpern, U.S.D.J.
Southern District of New York
300 Quarropas St., Courtroom 520
White Plains, NY 10601-4150

Re: <u>United States v. Donavan Gillard</u>, Dk No. 7:20-cr-00626 (PMH)

Dear Judge Halpern:

    I write to update the Court on the status of the above entitled matter in which the Court appointed me "for purposes of defendant's motion to modify his term of imprisonment." September 12, 2022 Order (citing Doc. 464). I anticipate that, while styled a motion for compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A)(i), the Government will argue that Mr. Gillard's *pro se* motion, dated the day after this Court imposed a sentence summing 248 months, is merely a mislabeled collateral attack on his sentence, an attack prohibited by the plain terms of the appeal waiver provision in the parties' September 4, 2021 Plea Agreement.

    After reviewing the docket entries, plea agreement, PSR and plea and sentencing transcripts, Mr. Eddy has suggested that my appointment may owe at least in part to the Court's discomfort with some aspect of the defendant's sentencing proceeding. In that regard, we must report to the Court our collective belief that Mr. Gillard received less than effective assistance of counsel at his sentencing proceeding and that, while it may be beyond the scope of our appointments, a motion pursuant § 2255 is the proper procedural vehicle to present that claim.

A.    <u>The Appeal Waiver Provision In The Parties Plea Agreement Forbids A Collateral Attack on Mr. Gillard's Sentence.</u>

Page-2
Letter to Hon. Halpern, U.S.D.J.
December 6, 2022

Prior to accepting his plea, the Court assured itself that Mr. Gilliard had read and understood his September 4, 2021 Plea Agreement with the Government[1] as well as the waiver of appellate rights included therein.[2] The appeal waiver provides, in pertinent part:

> It is agreed (i) that the defendant will not file a direct appeal; *nor bring a collateral challenge,* including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, *of any sentence* within or below the Stipulated Guidelines Range of 248 to 295 months' imprisonment…. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

September 4, 2021 Plea Agreement at 6-7 (emphasis added).

Mr. Gilliard's *pro se* motion seeking compassionate release after a single day under sentence asserts no ground, i.e. medical condition, family circumstances, age, recognized in U.S.S.G § 1B1.13 (a)(1) or its Application Note 1. Rather he asserts that he deserves *compassionate* relief because he demonstrated extraordinary acceptance of responsibility in executing his plea agreement *prior to sentencing*, which, he maintains, the Court failed to consider in imposing sentence. Gilliard August 18, 2022 Pro se Motion at 2 (hereinafter "motion"). Mr Gilliard asserts, as well, that he should be credited with pleading guilty to Count

---

[1] THE COURT: I've been given a letter dated September 24th from the government's attorney to your attorney, which is a plea agreement between you and the government. Which we'll mark, Mr. Cangelosi, Court Exhibit 1. I see on page 9, and I want to verify, Mr. Gillard, above your name, there's handwriting. Is that your signature?
The Defendant: Yes.
The Court: And you dated it today, November 4, 2021?
The Defendant: Yes.
The Court: Did you also ask your attorney, Mr. Magwood, to sign, as well, on your behalf?
The Defendant: Yes.
The Court:: Before you signed this agreement, did you read it?
The Defendant: Yes.
The Court: Did you discuss it with your attorney, Mr. Magwood, before you signed it?
The Defendant: Yes.
The Court: Did you discuss every aspect of this agreement with him?
The Defendant: Yes.
The Court: Did you understand the agreement at the moment you signed it?
November 4, 2021 Plea Proceeding, at 17-18

[2] THE COURT: There appears to be what the lawyers call an appeal-waiver provision on page 6 of the agreement, 6 and 7.  Do you understand that, under the plea agreement, you're giving up your right to appeal or otherwise challenge your sentence so long as I sentence you within or below the stipulated guidelines range of 248 to 295 months' imprisonment with a mandatory minimum of 60 months' of imprisonment?
The Defendant: Yes.
November 4, 2021 Plea Proceeding, at 20

Page-3
Letter to Hon. Halpern, U.S.D.J.
December 6, 2022

14 of the Indictment, which, his concessions in his plea colloquy notwithstanding,[3] he believes to have been without factual basis.

---

[3] THE COURT: With respect to Count Fourteen of the superseding indictment, how do you plead, guilty or not guilty?
The Defendant: Guilty, your Honor.
The Court: Are you in fact guilty of that charge, Mr. Gillard?
The Defendant: Yes….
… The Court: Mr. Logarajah, would you please summarize what the government would expect to prove if this case went to trial.
AUSA Logarajah: Of course, your Honor.
If this matter were to go to trial on Counts One and Fourteen, the government would expect to introduce the following types of evidence, among others:
First, extractions from the defendant's cell phone showing that the defendant trafficked marijuana with members of Gorilla Stone, sold firearms with them….,
…Third, social media evidence which would show the highly organized nature of Gorilla Stone and the rules that Gorilla Stone members abided by, including that members had to be armed;
Fourth, cooperator testimony which would establish that members of Gorilla Stone were armed, they sold drugs, and that the defendant himself was armed when selling narcotics.
his testimony would also establish, your Honor, that the defendant pushed the button for ordering an act of violence which led to a shooting in Brooklyn;
Fifth, photographs from the defendant's cell phone and other seized cell phones showing that the defendant and other members of the gang stored firearms in close proximity to narcotics that they sold.
   Your Honor, all of this would establish beyond a reasonable doubt that the defendant was a member of the racketeering conspiracy known as the Untouchable Gorilla Stone Nation, which has existed *since at least 2010*, and possessed a firearm in furtherance of narcotics trafficking with other members of Gorilla
   Stone.
The Court: Thank you, Mr. Logarajah.
Mr. Gillard, did you hear what Mr. Logarajah just said?
The Defendant: Yes, your Honor.
The Court: *Is what he said substantially accurate?*
The Defendant: *Yes.*
November 4, 2021 Plea Proceeding, at 22-24 (emphasis added).

The Court: Okay. Please tell me in your own words what you did to make you believe you're guilty of Count One and Count Fourteen in this superseding indictment.
The Defendant: I was a part of a gang *from about 2010* to 2020, and I also possessed *and carried a firearm in drug trafficking*….
…The Court: You carried a gun at all times as a member of the gang?
The Defendant: Not all the time. I have. Yes.
The Court: You have carried a gun?
The Defendant: Yes. The Court: To protect yourself and other gang members?
The Defendant: Myself.
November 4, 2021 Plea Proceeding, at 25-27 (emphasis added).

RICHARD PALMA<br>ATTORNEY AT LAW

Page-4
Letter to Hon. Halpern, U.S.D.J.
December 6, 2022

Mr. Gilliard's motion would thus seem to run afoul of his plea agreement pledge not to collaterally attack his sentence, rendering its further prosecution pursuant to my appointment problematic, for him. The waiver, does, however, explicitly permit an attack on any aspect of the proceeding grounded on the ineffective assistance of counsel:

> Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

September 4, 2021 Plea Agreement at 6-7 (emphasis added).

And here Mr. Gilliard has a meritorious attack to mount.

B. <u>By Conceding That Mr. Gilliard Had A Criminal History And That He Had Committed The instant Offense While Under A Criminal Justice Sentence, Trial Counsel Rendered Mr. Gillard Ineffective Assistance.</u>

U.S.S.G. § 4A1.2 (a)(1) defines the term 'prior sentence' to mean any sentence previously imposed upon adjudication of guilt for *conduct not part of the instant offense*. Application Note 1 to that section § 4A1.2 further clarifies, "A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence *if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense* under the provisions of §1B1.3 (Relevant Conduct)." Application Note 1 to § 4A1.2 (emphasis added).

Here, the convenient conclusion that the conspiracy charged in Count 1 commenced in 2010 maximized Mr. Gilliard's exposure on the Guidelines Criminal History axis, allowing both the Plea Agreement and the Probation department to decree a July 7, 2010 conviction for Attempted Criminal Possession of a Weapon in the Second Degree (Kings Co. Ind. No.: 04035-2009) resulting from Mr. Gilliard's May 4, 2009 arrest at age 17 a prior conviction and thus that the instant offense was committed while still under a sentence therefor. See PSR at ¶¶ 101-104. (assessing two more Criminal History points pursuant to USSG §4A1.1(d))

The Government so declared despite its acknowledged ignorance of the actual date Mr. Gilliard joined the conspiracy:

> The Court: This, this period of time is 2010 to 2021, right? I mean, *that's the period of time in the Indictment*.
> AUSA Heavey: So, that is the period of time in the Indictment. *I will say the specific date that this Defendant joined and became a participant, the Government does not have specific information on that.* What I think is undisputed is a couple of things: One, he gets into that gang fight, a serious gang fight *while he's in custody*, which for the Government raises the concern that -- as Your Honor knows, there's an entire Gorilla Stone lineup in prison. So, it's very possible that he started while he was in prison. In any event, there is

**Page-5**
**Letter to Hon. Halpern, U.S.D.J.**
**December 6, 2022**

> no dispute that during -- he became involved in the time period that he was on parole, which was 2013 to 2015.

August 17, 2022 Sentencing Proceeding (hereinafter "S") at 14 (emphasis added).

The Court was unable to draw any contrary conclusion:

> The Court: *I don't have the detail.* You don't have the -- or maybe you do have the detail. The Government has indicated, notwithstanding the Indictment, it's from 2010 to 2021, *they don't have exact dates and times of things.*

S. 24 (emphasis added)

Rather than a Criminal History Category III sentencing range of 188 to 235 months of imprisonment, S. 9; PSR at ¶¶ 99, 104, 133, Mr. Gillard would have a Category I guideline range of 151-188, 37 months less and at least an argument that that range should be discounted by the four years he served as teenager for conduct relevant to the charged conspiracy.

Nevertheless, in the absence of any objection from counsel, the Court adopted the PSR's inadequate factfinding and the erroneous criminal history conclusions based thereon:

> The Court: Does the Defendant object to the Guidelines calculation or anything else in the PSR?
> Defense Counsel: No, Your Honor.
> The Court: Based on the parties' agreement as set forth in their Plea Agreement, as well as my review of the Presentence Report and my own evaluation of the Sentencing Guidelines, I adopt the Guidelines calculation in the PSR and conclude that the Final Offense Level is 34, at Criminal History Category III, which yields a sentencing range of 188 to 235 months of imprisonment, with a mandatory and consecutive term of five years of imprisonment for Count 14.

S. 9 (emphasis added)

Then, with no prompting and unaware that it had the potential to ever confer any benefit, Mr. Gilliard, upon being offered the opportunity to speak, spontaneously confessed to the Court that he joined the gang *before* his 2007 arrest and conviction:

> The Defendant: I was influenced by older guys in my neighborhood who wasn't too fond of police, and I began to perceive these individuals as big brothers, as well as my protectors. I was always -- I was always the little one out of the crew and the youngest.
> *As I entered junior high school, I was bullied due to my size, which led me to sought protection. I began to hang around the wrong crowd and eventually was persuaded to join the Blood Gang.* Joining the Blood Gang -- joining the gang, in my mind, gave me empowerment as I rise in status. I felt untouchable. I never wanted to hurt anyone. I only wanted to protect my family and earn money to eventually move my grandmother out of housing.

S. 31(emphasis added).

Page-6
Letter to Hon. Halpern, U.S.D.J.
December 6, 2022

C. Outside The Wide Range Of Professionally Competent Assistance, Counsel's Failure To Make An Independent Examination Of The Facts And Laws Involved Before Recommending Acceptance Of The Plea Agreement Adversely Effected The Result Of The Proceedings.

1. The Standard For Assessing The Effectiveness Of Counsel As To The Decision To Plead Guilty.

Defense counsel carries the paramount duty to ensure that the client's decision whether or not to waive his constitutional right to trial is as informed as possible. 680 F.3d, at 587. "[A]n accused is entitled to rely upon his counsel (1) to make an independent examination of the facts, circumstances, pleadings and laws involved and then (2) to offer his informed opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721 (1948).

The Supreme Court held in Hill v. Lockhart, 474 U.S. 52 (1985) that "the two-part Strickland v. Washington[, 466 U.S. 668 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. at 58. Thus, a defendant must first prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To establish deficient performance, a defendant must identify acts that were "outside the wide range of professionally competent assistance." Id. at 690. "Where, as here, a defendant is represented by counsel during the plea process and enters [her] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, supra, (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

Here, counsel either failed to fully debrief Mr. Gilliard, failed to appreciate the significance of Mr. Gilliard's disclosure at sentencing, or both.

2. The Available Evidence Suggests That Competent Counsel Could Have Achieved A More Favorable Result.

The Probation Department relied on the prior conviction to support its recommendation of a 248-month sentence, see PSR at p. 34 ("*Given the defendant's criminal history* and his conduct in the instant offense,…), as did the prosecutrix in "seeking a sentence of 248 to 295 months of imprisonment, S. 9

> Ms. Heavey: Now, there's one prior conviction. Obviously, that's not a significant criminal history, but it -- that one conviction is very troubling, demonstrates significant violence. In the middle of the day firing a gun in a community area outside a housing development where numerous bystanders are nearby. Then, while in custody, getting into a serious gang-related violent assault, which resulted in him being six months in the Special Housing Unit. And then, as I said, released on parole, and, you know, sometime thereafter getting -- getting involved in Gorilla Stone, where he continued to be involved

**Page-7**
**Letter to Hon. Halpern, U.S.D.J.**
**December 6, 2022**

> for years at a time. And while that may not be multiple years of convictions, we've got such an extensive period of time of criminal involvement that -- again, that's something that is not taken into account in criminal history, because they aren't new arrests and convictions, but it's an extensive period of noncompliance with the law.

S. 16-17

Albeit in remarks likely prepared prior to the proceeding, the Court, too, cited the significance of Mr. Gilliard's seemingly persistent criminality to the bottom-of-the-guideline sentence it chose to impose:

> The Court: I also have to take into account your criminal history, that you joined an incredibly violent gang and that you further rose in the ranks of that gang -- in the ranks of that gang, becoming intimately involved in the full range of criminal activities. *Your involvement with the instant offense began shortly after you were released from incarceration from your prior criminal sentence* and while you were on post-release supervision. That is an aggravating factor.

S. 40-41 (emphasis added)

In these circumstances, I have advised Mr. Gilliard to forego his compassionate release motion, at least for the time being, and instead pursue 28 U.S.C. §2255(b) relief on ineffective assistance grounds.

D. While Compassionate Release Is Now More Available Than It Once Was, Even Were The Court To Find It Technically Available Here, Seeking It So Soon Would Not be Advisable.

The rule of finality forbidding federal courts from modifying a term of imprisonment once it has been imposed is subject to a few narrow exceptions. Freeman v. United States, 564 U.S. 522, 526 (2011). One was created by 18 U.S.C. § 3582(c), the compassionate-release statute. Under the First Step Act, defendants serving their sentence may move the Court for compassionate release. United States v. Gotti, 433 F.Supp.3d 613, 615 (S.D.N.Y. 2020); United States v. Gross, No. 15-CR-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020). The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), *in order to "increas[e] the use and transparency of compassionate release."* Zukerman, 2020 WL 1659880 at *3 (citing 132 Stat. 5239)(emphasis added). See also Brooker, 976 F.3d 228, 223 ("One co-sponsor of the bill described this provision as both "expand[ing]" and "expedit[ing]" compassionate release. 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin). Another representative stated that the First Step Act was "improving application of compassionate release ...." 164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018) (statement of Rep. Jerrold Nadler). Sentiments like these were apparently so widely shared that Congress titled this portion of the First Step Act, "Increasing the Use and Transparency of Compassionate Release." See P.L. 115-391 § 603(b), 132 Stat. 5194, 5239.)

The *Brooker* panel helpfully further observed:

Page-8
Letter to Hon. Halpern, U.S.D.J.
December 6, 2022

>It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence *reductions*. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. Beyond this, a district court's discretion in this area—as in all sentencing matters—is broad.

United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) (emphasis added).

Thus, after it considers the factors set forth in 18 U.S.C. § 3553(a), § 3582(c) allows a court to "reduce" a term of imprisonment if "it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Adopting the approach of a coordinate court, this Court has additionally opined "that a sentence reduction is warranted only if '[t]he defendant is not a danger to the safety of any other person or to the community." Rodriguez, 2020 WL 5810161 at 2 & n.3 (quoting United States v. Torres, 464 F.Supp.3d 651, 659 (S.D.N.Y. 2020). The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added).

While the grounds a defendant can raise in seeking the Courts are compassion are almost without limit, it is doubtful that they encompass the claim Mr. Gilliard makes here, that the Court simply erred in weighing the 3553 factors, specifically his "extraordinary" acceptance of responsibility.

Further, 18 U.S.C § 3582(c) only permits the court to modify a term of imprisonment for "extraordinary and compelling reasons" "upon motion of the defendant *after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*." 18 U.S.C § 3582(c)(1)(A)(i).

Mr. Gillard failed to request the Warden's assistance in his quest for compassionate release. At the time he mailed his motion, which was docketed on August 19, 2022, Mr. Gillard had yet to be surrendered to BOP custody, much less have 30 days elapse. It is not clear what authority the warden of the Westchester County Correctional Facility had to accept or process a request for BOP intercession in the compassionate release process. See 28 C.F.R. § 571.61(a)(1) ("a prisoner seeking § 3582(c)(1)(A) compassionate release must submit a written request to the Warden of the facility in which s/he is incarcerated, explaining the extraordinary or compelling circumstances which the sentencing court could not reasonably have foreseen at the time of sentencing."); BOP PS 5050.50 § 571.61 (2)(a),(b) (January 17, 2019) (https://www.bop.gov/policy/progstat/5050_050_EN.pdf). In support of so much of his motion as asks the court to dispense with the exhaustion required, Mr. Gilliard has asserted, absent citation to any authority, that the Westchester County warden has none. Motion, at 6 ("It should also be noted that, although Section 3582(c)(1)(A), has an "exhaustion" requirement attached to it, since Defendant is currently housed at a non-Bureau of Prisons facility, the warden of his

**Page-9**
**Letter to Hon. Halpern, U.S.D.J.**
**December 6, 2022**

current facility is without the authority to entertain a request for compassionate release. Exhaustion is therefore impractical, unnecessary and unwarranted.")

The exhaustion requirement in § 3582(c)(1)(A) has, however, been ruled non-jurisdictional and can be waived or forfeited. United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021)(citing Hamer v. Neighborhood Hous. Servs., ___ U.S. ____, 138 S. Ct. 13, 17, (2017) ("§ 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government").

Neither would Mr. Gillard appear to be able to avail himself of the provision of § 3582(c)(1)(B) that permits modification pursuant to Rule 35 of the Federal Rules of Criminal Procedure. See 18 § 3582(c)(1)(B) ("the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35)." The "clear error" clause of Rule 35(c) provides only "very narrow" authorization to modify a sentence. See United States. v. DeMartino, 112 F.3d 75, 79 (1997) (citing Fed.R.Crim.P. 35 Advisory Committee Note (1991)("Rule 35(c) authorizes correction "only [of] ... obvious error[s]," and was not meant to allow the district court "to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines," or "to reconsider the application or interpretation of the sentencing guidelines," or "simply to change its mind about the appropriateness of the sentence." Advisory Committee Note; see, e.g., United States v. Abreu-Cabrera, 64 F.3d 67, 71-73 (2d Cir.1995).)

E.   Conclusion

While I am far from certain that Mr. Gilliard can present the grounds upon which he seeks relief via § 3582(c), I believe that he has a potentially productive path forward were he to seek relief on ineffective assistance grounds pursuant to § 2255. Of course, Mr. Gilliard has no constitutional right to the appointment of counsel to pursue a collateral attack on his sentence, whether under Section 2255 or otherwise. See, e.g., Murden v. Artuz, 497 F.3d 178, 194 (2d Cir.2007). While Rule 8(c) of the Rules Governing Section 2255 Proceedings requires the appointment of counsel to represent a financially eligible moving party in a § 2255 proceeding "[i]f an evidentiary hearing is required," it does not require such appointments at earlier stages, let alone for the purpose of preparing a § 2255 motion. Nevertheless, the Criminal Justice Act (the "CJA") permits the appointment of counsel at public expense "for any financially eligible person who ... is seeking relief under section ... 2225 of title 28" if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2).The pivotal question here, then, is whether the interests of justice so require.

**Page-10**
**Letter to Hon. Halpern, U.S.D.J.**
**December 6, 2022**

      Should the Court believe that the foregoing establishes that they do and be willing to issue a new Order broadening our authority to proceed, Mr. Eddy and I would be happy to continue our representation of Mr. Gilliard by fully briefing his ineffective assistance claim. If not, hopefully this latter provides him a roadmap to so seek it *pro se*.

                      Respectfully submitted,
                      s/ Richard Palma
                      Richard Palma