```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                                   OPINION AND ORDER

DWIGHT REID, et al.,                                                 20-CR-00626 (PMH)

                            Defendants.
-----------------------------------------------------------X
```

PHILIP M. HALPERN, United States District Judge:

Pending presently before the Court are the pretrial motions filed by Christopher Erskine ("Erskine"), joined by certain of the remaining defendants in this case, Dwight Reid ("Reid") and Ahmed Walker ("Walker" and collectively, "Defendants"). Defendants move: (1) to suppress evidence obtained from wiretaps; (2) to require the Government to satisfy chain of custody requirements regarding wiretaps; (3) for a bill of particulars; and (4) to sever their cases from their co-defendants.[1] Defendants (and defendant Robert Woods ("Woods")) also move the Court to set certain pretrial disclosure deadlines.[2]

Based upon the parties' written submissions and for the reasons set forth below, Defendants' motions are DENIED.

## BACKGROUND

The Federal Bureau of Investigation ("FBI") and Peekskill Police Department, in or about March 2020, began a criminal investigation of persons believed to be involved in a "Bloods" gang known as the Untouchable Gorilla Stone Nation ("Gorilla Stone"). (Doc. 386-1,

---

[1] Defendants DeShawn Thomas ("Thomas") and Caswell Senior ("Senior") withdrew their motions in connection with their guilty pleas. (Doc. 416; Doc. 417). Defendant Brandon Soto ("Soto"), who joined in Erskine's motion without advancing additional argument (*see* Doc. 385), likewise entered a guilty plea rendering his motion moot.

[2] Senior's motion was joined "where applicable" by Defendants as well as their co-defendants Soto, Thomas, Woods, and Isaiah Santos ("Santos"). (Doc. 388 at 5). Santos, like Soto and Thomas, has since entered a guilty plea.

"Gauli-Rufo Decl.," Ex. A at 14-15; *id.*, Ex. B at 10). The investigation of Gorilla Stone concerned suspected racketeering activity, narcotics trafficking, and acts of violence. (*Id.*, Ex. B at 10). The investigation led to applications by the Government for warrants, including prospective and historical location information, pen register information, and wiretaps. On or about June 16, 2020 and July 24, 2020, wiretaps of a phone used by defendant Naya Austin ("Austin") ending in -2100 (the "2100 Number") were authorized by Judge Kenneth Karas. On or about August 14, 2020, this Court authorized a wiretap of a phone used by Walker ending in -5480 (the "5480 Number"). (*See* Doc. 389-1). On September 4, 2020, a wiretap of a phone used by Erskine ending in -8755 (the "8755 Number") was authorized by Judge Edgardo Ramos after reviewing, in part, an affidavit prepared by FBI Task Force Officer Joseph McGann (the "McGann Affidavit"). (Gauli-Rufo Decl., Ex. A). The McGann Affidavit annexed the wiretap applications supporting the warrants authorized for the wiretaps of the 2100 Number and 5480 Number. Familiarity with the content of the applications for these wiretaps is presumed for purposes of this Order.

An indictment first issued in this case on or about November 23, 2020. (Doc. 1). The operative Superseding Indictment (S-6) charges 14 defendants with 25 counts including racketeering conspiracy, murder, assault, arson, attempted murder, identity theft, narcotics trafficking, and firearms trafficking, among other offenses. (Doc. 245).

## ANALYSIS

I. Motion to Suppress Wiretap Evidence

Erskine seeks suppression of evidence obtained from a wiretap of the 8755 Number, arguing that he is entitled to a hearing and suppression pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because the McGann Affidavit "provides several materially misleading and false

statements and misrepresentations, as well as material omissions that led to the issuance of the warrant that was requested, with reckless disregard for the truth." (Doc. 386-12, "Erskine Br." at 3-4).[3] These alleged misstatements and omissions include: (1) McGann's interpretation of coded lingo used by Erskine's co-conspirator; (2) McGann's interpretation of recorded prison calls between Erskine and Habbakuk Tracey ("Tracey"); (3) McGann's omission of Erskine's co-conspirators' earlier meeting with a confidential informant ("CI") on August 10th; (4) McGann's statement that Austin's associates drove from Brooklyn "back to Peekskill – making no stops" on August 10th; (5) McGann's statement that surveillance of Erskine was conducted on August 10th; (6) McGann's interpretation of "Regent" as a person as opposed to a street; and (7) McGann's interpretation of a conversation between Erskine and a co-conspirator concluding that Erskine never intended his non-profit to actually engage in charitable activities. (*Id.* at 9-19). Defendants further argue that the allegations in the McGann Affidavit fail to support a finding of probable cause that a crime was committed and fail to justify the necessity of a wiretap. (*Id.* at 15-19).

"Title III authorizes federal judges to order the interception of wire, oral, or electronic communications, and it sets forth the procedure by which the Government may apply for such orders." *United States v. Messalas*, No. 17-CR-00339, 2020 WL 1666162, at *3 (E.D.N.Y. Apr. 4, 2020) (citing 18 U.S.C. §§ 2516, 2518). A wiretap application must "establish probable cause that a particular offense has been or will be committed and that communications about that offense will be intercepted," and it must demonstrate "necessity" in that "'normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried

---

[3] Walker refers to the wiretap of the 5480 Number in his motion, but does not advance any argument in support of suppression of that wiretap evidence. (Doc. 389 (arguing that suppression of the 5480 Number wiretap evidence is warranted "[f]or the reasons stated in the motions of Mr. Walker's co-defendants"). Thus, the discussion and determinations herein equally apply to the extent Walker seeks suppression of the fruits of the wiretap of the 5480 Number.

3

or to be too dangerous." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 77-78 (2d Cir. 2018) (quoting 18 U.S.C. § 2518(3)); *see also United States v. Rajaratnam*, 719 F.3d 139, 151-52 (2d Cir. 2013) (discussing the "probable cause" and "necessity" elements of wiretap applications).

A motion to suppress wiretap evidence, when challenging the warrant's underlying affidavit, is analyzed under the framework established by the Supreme Court in *Franks*. *Rajaratnam*, 719 F.3d 139 at 151. "The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

> To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding.

*United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). A "substantial preliminary showing" on both elements—intent and materiality—is necessary to warrant even an initial hearing on the defendant's claim. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008); *see also Franks*, 438 U.S. at 171-72; *Rajaratnam*, 719 F.3d at 146.

"There is, of course, a presumption of validity with respect to the affidavit supporting" a wiretap application. *Franks*, 438 U.S. at 171. "To mandate an evidentiary hearing, the challenger's attack on the affidavit must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. A defendant's "allegations of deliberate falsehood or of reckless disregard for the truth . . . must be accompanied by an offer of proof." *Id*. If a substantial preliminary showing has been made and "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause and necessity, the district court need not conduct a *Franks*

4

hearing." *Messalas*, 2020 WL 1666162, at *3 (internal citations and alteration omitted); *see also Franks*, 438 U.S. at 171-72.

A. <u>Allegations of Misleading Statements and Omissions in the McGann Affidavit</u>

As noted above, Erskine points to seven specific inaccuracies or omissions in the detailed, 41-page McGann Affidavit (excluding its exhibits), which he contends are material and show that McGann recklessly disregarded the truth or intentionally lied. These seven points can be grouped into two categories: (i) McGann's interpretations of certain conversations; and (ii) McGann's description of the August 10th transaction.

i. *McGann's Interpretations of Conversations*

Many of the statements at issue are McGann's reasonable interpretations of conversations rather than material misstatements. As discussed further below, Erskine's "dispute with [McGann's] interpretations of conversations does not warrant either a *Franks* hearing or suppression." *United States v. Gotti*, 42 F. Supp. 2d 252, 280 (S.D.N.Y. 1999). This Circuit has emphasized that "*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true.'" *United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) (quoting *Franks*, 438 U.S. at 165)). Thus, "it is one thing to say that an affiant falsely or recklessly stated facts from which he thereafter drew conclusions. It is quite another thing to say that the conclusions drawn from the facts fairly stated were falsely and recklessly made." *United States v. Jimenez*, 824 F. Supp. 351, 361 (S.D.N.Y. 1993) (quoting *United States v. Gotti*, 771 F. Supp. 535, 539 (E.D.N.Y. 1991)).

Erskine argues that McGann's interpretation as references to narcotics of the phrases "8balls" and "grams" used by a co-conspirator—defendant Stephen Hugh ("Hugh")—when discussing Erskine's role as a supplier is a material misstatement. Erskine does not, however,

offer any another interpretation or anything more than his conclusory allegations that such interpretation is "preposterous" and "ridiculous." (Erskine Br. at 9). It is reasonable to conclude that the phrases "8balls" and "grams" refer to crack and cocaine. Indeed, the Second Circuit has explained that "[a]n eight-ball contains one-eighth of an ounce, or three and one-half grams of cocaine." *United States v. Wozniak*, 126 F.3d 105, 108 (2d Cir. 1997). Hugh's comments to Austin, taken in context, are reasonably interpreted as discussion of Erskine's role as a supplier of cocaine and crack. Erskine's disagreement with the conclusions drawn from the facts fairly stated is insufficient, without more, to warrant a *Franks* hearing.

Erskine further objects to McGann's interpretation of recorded prison calls between Erskine and Tracey as concerning narcotics. The McGann Affidavit explains that Tracey had been arrested and convicted after drugs and a firearm were found in the residence where Erskine was residing, and, in light of his analysis of evidence that Erskine's co-conspirators viewed him as a supplier, sets forth his interpretation of parts of two jail calls between Erskine and Tracey. (Gauli-Rufo Decl., Ex. A at 22-24). Erskine referred to an "arrangement" with Tracey over which Erskine had "full control" while staying in Tracey's residence, as well as an arrangement between Erskine and another individual who seemingly did not hold up his end of the bargain. (*Id*.). Erskine argues that the generalized terms used on the calls and Erskine's desire not to talk about the subject matter on a recorded prison line during that conversation cannot be interpreted to refer to drug sales. (Erskine Br. at 14-15; Doc. 435, "Reply" at 6-7). However, the Second Circuit "long ha[s] recognized that drug dealers seldom negotiate the terms of their transactions with the same clarity as business persons engaged in legitimate transactions." *United States v. Garcia*, 291 F.3d 127, 139 (2d Cir. 2002). Again, Erskine's disagreement with McGann's

reasonable interpretations of the coded jail calls with Tracey do not meet the substantial preliminary showing necessary under *Franks*.

Erskine also takes issue with McGann's interpretation of a jail call between Erskine and Reid on August 23, 2020 when Erskine mentioned that "Regent over here just got boomped up last night." (Erskine Br. at 16; Reply at 7). McGann concluded that, based upon his training, experience, and involvement in the investigation, his belief was that Erskine was informing Reid that Gorilla Stone members had shot an individual named Regent. (Gauli-Rufo Decl., Ex. A at 20). Erskine, clarifying that "Regent" is a street, not a person, contends that McGann's conclusion is therefore materially false. Erskine, however, does not dispute there was a shooting on Regent the night before the recorded call, and in any event, "*Franks* does not require that all statements in an affidavit be true." *Campino*, 890 F.2d at 592. *Franks* protects against "lawless or reckless misconduct" and "[a]llegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 169, 171. That McGann incorrectly concluded that Regent described the name of an individual rather than the location of the shooting does not satisfy the burden required to warrant a hearing or suppression.

Erskine challenges McGann's interpretation of another aspect of Erskine's August 23rd conversation with Reid concerning the use of a purported 501(c)(3), D.A. E.M.P.I.R.E. Specifically, Erskine takes issue with McGann's conclusion that Erskine did not intend for the entity to actually engage in charitable activities and rather, the primary mission of D.A. E.M.P.I.R.E. was to enrich members of Gorilla Stone. That piece of the McGann Affidavit was an interpretation of Erskine's statement to Reid that: "your wife, me, everybody else, we need to get paid the correct amount of bread and the only way we going to get that is through donations and grants. And then your wife, she don't have to worry about working and none of that. You

7

ain't gotta worry about shit like that no more." (Gauli-Rufo Decl., Ex. A at 25). Erskine's comments to Reid are reasonably interpreted to concern the purpose of the purported non-profit entity as set forth in the McGann Affidavit. Accordingly, a *Franks* hearing is not warranted based upon this showing.

        *ii.*        *The August 10th Transaction*

The McGann Affidavit describes a narcotics transaction that occurred on August 10, 2020, which is the subject of the remainder of Erskine's challenges to the accuracy of the statements supporting the wiretap application and omissions therefrom.

Erskine maintains that McGann intentionally omitted discussion of an earlier meeting on August 10th between a CI and certain of Erskine's co-conspirators and that, had it been included, it would have raised doubts about Erskine's alleged involvement in the narcotics sale. Erskine contends that inclusion of the earlier meeting would establish a six-hour time frame before the later meeting with the same CI, leading to the possibility that the co-conspirators got the drugs from someone other than Erskine; by omitting the co-conspirators' earlier meeting with the CI, according to Erskine, the McGann Affidavit makes the sale appear to have happened in a much shorter period of time. (Erskine Br. at 12; Reply at 4-5). The Government responds that the omitted recorded conversation of the earlier meeting is in fact inculpatory, as the CI can be heard rejecting the "narcotics" the co-conspirators tried to sell him, thus precipitating the need for those co-conspirators to take the trip from Peekskill to Brooklyn to meet with Erskine that afternoon. (Doc. 424, "Opp." at 8). In other words, inclusion of the CI's earlier meeting with Erskine's co-conspirators would have reinforced the McGann Affidavit because it would have shown Erskine's access to narcotics and that members of the conspiracy turned to Erskine when they needed drugs. (*Id.*).

"*Franks* protects against omissions that are designed to mislead, or . . . are made in reckless disregard of whether they would mislead." *United States v. Awadallah*, 349 F.3d 42, 67 (2d Cir. 2003). "[T]he mere intent to exclude information is insufficient, as . . . '[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" *Id*. at 67-68 (quoting *United States v. Colkley*, 899 F.2d 297, 300-01 (4th Cir. 1990)). Omissions like the one at hand (i.e., facts which would have strengthened the wiretap application's probable cause showing), are not the type of omissions that *Franks* is meant to protect against. *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) ("In general, it is strong evidence that the Government did not deliberately falsify information in the affidavit, or act with 'reckless disregard for the truth,' when the alleged omission would have strengthened, rather than weakened, the Government's showing of probable cause."); *Rajaratnam*, 719 F.3d at 155 ("[W]e cannot conclude that the government omitted certain information about the SEC investigation with 'reckless disregard for the truth' when it is clear that fully disclosing the details of that investigation would only have strengthened the wiretap application's 'necessity' showing.").

Erskine further claims that "[t]here is no indication that any law officer surveilled the associates' drive from Brooklyn back to Peekskill" and takes issue with the statement in the McGann Affidavit that the co-conspirators made "no stops" from Brooklyn to Peekskill to meet with the CI. (Erskine Br. at 12-13). However, according to a surveillance log from that day, Detective John Marchioni of the Peekskill Police Department observed the target vehicle containing the co-conspirators drive from Peekskill to Brooklyn, arrive and park in and around Erskine's residence, "proceed[ ] west" after leaving Erskine's residence, "continue[ ] back to Peekskill," and "enter the buy location in Peekskill." (Gauli-Rufo Decl., Ex. H at 2; Doc. 424-1

at 2). Although Erskine takes issue with the amount of time it appears to have taken to drive from Brooklyn to the buy location in Peekskill (approximately 2 hours and 15 minutes), Erskine offers nothing more than speculation and a "mere desire to cross-examine" in support of this allegation of a material misstatement. *Franks*, 438 U.S. at 171.

Similarly, Erskine suggests that the statement in the McGann Affidavit that surveillance of Erskine was conducted on August 10th is a material misrepresentation. (Erskine Br. at 13). The statement was based on Marchioni's description in the surveillance log that he observed the co-conspirators meet with an individual who "appeared to be" Erskine near Erskine's residence. (Gauli-Rufo Decl., Ex. H at 2; Doc. 424-1 at 2). To the extent Erskine argues that the language used by Marchioni means he did not make a positive identification of Erskine, Erskine does not demonstrate that the statement in the McGann Affidavit was anything more than "negligence or innocent mistake," which are insufficient to warrant a hearing. *Franks*, 438 U.S. at 171; *see also United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996) (finding no evidence of "deliberate prevarication" where the claimed inaccuracies in the supporting affidavit that a car had been purchased with cash only, when in fact it was purchased "with a combination of cash, cashier's checks, and a $500 personal check," and holding that the alleged misstatement "in no way undermined the showing of probable cause").

Accordingly, for the foregoing reasons, the purported misrepresentations and omissions alleged by Erskine fail to make the "substantial preliminary showing" necessary to warrant an evidentiary hearing. *Falso*, 544 F.3d at 125; *Franks*, 438 U.S. at 171-72.

### B. Probable Cause

Erskine further argues that the allegations in the McGann Affidavit fail to support a finding of probable cause that a crime is or was afoot. As an initial matter, "wiretap orders are

10

presumed valid," *United States v. Zapata*, 164 F.3d 620 (2d Cir. 1998), and a "reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists," *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). Thus, this Court's determination is "limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *Id*.

"Probable cause to issue a wiretap order exists when the facts made known to the issuing court are 'sufficient to warrant a prudent man in believing' that evidence of a crime could be obtained through the use of electronic surveillance." *United States v. Ruggiero*, 824 F. Supp. 379, 398 (S.D.N.Y. 1993) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995). "The affidavit supporting the application for electronic surveillance must be read as a whole, and construed in a realistic and common-sense manner, so that its purpose is not frustrated." *Id*. at 399. "In other words, a court must look at the snowball, not the individual snowflakes." *United States v. Scala*, 388 F. Supp. 2d 396, 402 (S.D.N.Y. 2005).

Erskine contends that his ties to and involvement with Gorilla Stone do not support a finding of probable cause that a crime was committed. The McGann Affidavit sets forth facts showing that Erskine was using the 8755 Number to manage the affairs of Gorilla Stone, including organizing a gang-related meeting, discussing the payment of bail from communal funds for another gang member, and discussing acts of violence with the gang's founder and leader. (Gauli-Rufo Decl., Ex. A at 16-20). These facts, as set forth in the McGann Affidavit, establish probable cause to believe that evidence of racketeering offenses for RICO purposes could be obtained through the use of a wiretap. *See, e.g., United States v. White*, 7 F.4th 90, 100 (2d Cir. 2021) (evidence of a RICO enterprise includes evidence of a gang's "leaders, members,

and practices, which included committing acts of violence in groups and disseminating information about the gang's activities to protect members from retaliation); *United States v. Applins*, 637 F.3d 59, 78 (2d Cir. 2011) (evidence of agreement to form RICO enterprise and participate in its affairs includes the provision of "other assistance to gang members" such as "paying bail . . . and attorney's fees when a member was criminally charged"). Moreover, the McGann Affidavit establishes probable cause to believe that Erskine used the 8755 Number to engage in narcotics trafficking and wire fraud. (*See* Gauli-Rufo Decl., Ex. A at 20-29). Erskine argues in reply that Judge Ramos only found there was probable cause because McGann had materially misrepresented and omitted facts that caused the Court to make such a finding. (Reply at 8). As discussed *supra*, the statements with which Erskine takes issue were not materially misleading, and the McGann Affidavit as a whole provided facts sufficient for Judge Ramos to find probable cause to authorize the wiretap. Accordingly, this Court will not disturb Judge Ramos's conclusion as to probable cause.

   C. <u>Necessity</u>

Erskine contends that the McGann Affidavit also fails as to the requisite necessity showing in that it does not demonstrate that alternative investigative techniques were insufficient before resort to electronic surveillance. (Erskine Br. at 8). Specifically, Erskine argues that "many of the alternative techniques were not utilized as set forth in the [McGann] Affidavit," such as physical surveillance of Erskine and the use of more CIs. (*Id.*).

The "necessity" requirement of a wiretap application "only requires that the Government demonstrate 'that normal investigative techniques would prove difficult.'" *United States v. Labate*, No. 00-CR-00632, 2001 WL 533714, at *13 (S.D.N.Y. May 18, 2001) (quoting *United States v. Bellomo*, 954 F. Supp. 630, 638 (S.D.N.Y. 1997)). "[T]he law does not require the

Government to exhaust every avenue before resorting to electronic surveillance." *Messalas*, 2020 WL 1666162, at *7; *see also United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009) ("[T]he Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance."); *Bellomo*, 954 F. Supp. at 639 (the Government "need not show that any other option would be doomed to failure").

The McGann Affidavit detailed 14 different investigative techniques and explained why the techniques would not have been feasible. The need for a wiretap has been acknowledged in conspiracy cases like this one; indeed, "the Court of Appeals and courts in this Circuit have repeatedly approved of wiretaps in complex and sprawling criminal cases involving large conspiracies." *United States v. Sang Bin Lee*, No. 13-CR-00461, 2014 WL 144642, at *2 (S.D.N.Y. Jan. 15, 2014).

Erskine argues in reply that the Government's failure to advise Judge Ramos of the use of a CI constitutes a material misrepresentation and/or omission. (Reply at 10). Contrary to Erskine's assertion, the Dellapia affidavits were annexed to the McGann Affidavit as exhibits and incorporated by reference therein (Gauli-Rufo Decl., Ex. A at 12 n.1, 13 n.2), and the McGann Affidavit expressly discusses law enforcement's use of multiple CIs in the course of the investigation (*id*. at 30). Erskine has not demonstrated a sufficient basis for this Court to disturb Judge Ramos's finding that the necessity requirement had been satisfied.

Accordingly, the motion to suppress wiretap evidence is denied.[4]

II. <u>Chain of Custody Motion</u>

Erskine seeks an evidentiary hearing to require the Government to satisfy chain of custody requirements for all evidence it intends to introduce at trial, speculating that the limited unsealing of the wiretap of the 8755 Number resulted in the possibility that the recordings could have been altered. (Erskine Br. at 20-21).

The parties agree that on October 5, 2020, the original recordings of the wiretap of the 8755 Number were timely sealed pursuant to an order issued by Judge Karas and that on December 21, 2020, Judge Karas granted the Government's request for "limited" unsealing of the original recordings so that a copy could be made. On December 28, 2020, the original recordings were unsealed by agents and law enforcement officers and thereafter re-sealed on December 29, 2020 by order of Judge Seibel. (Doc. 424-4).

As set forth in Erskine's motion, the chain of custody is a method of authentication of physical evidence governed by Federal Rule of Evidence 901. Chain of custody and arguments concerning the susceptibility of evidence to tampering go to the weight, not admissibility, of evidence. *See, e.g., United States v. Bout*, 651 F. App'x 62, 64 (2d Cir. 2016) ("Alleged breaks in the chain typically do not bear upon the admissibility of evidence, only the weight of the

---

[4] Although not specifically included in his Notice of Motion (Doc. 386), Erskine also seeks suppression of evidence obtained from the issuance of a warrant to obtain prospective and historical cell site information that was issued on July 17, 2020 (*see* Doc. 386-3). He contends that the statements made in the supporting application "may support probable cause of Erskine's involvement or membership in Gorilla Stone" but not probable cause of criminal activity. (Erskine Br. at 5-6). In other words, Erskine makes the same arguments concerning the facts setting forth probable cause as those directed at the McGann Affidavit. The Government, in opposition, argues, *inter alia*, that Erskine's challenge fails for the same reasons as the McGann Affidavit—the supporting affidavit sufficiently demonstrated probable cause to believe that evidence of racketeering offenses for RICO purposes could be obtained through the requested cell site information. (Opp. at 14). Erskine's reply brief addresses itself only to the Government's alternative argument concerning standing. (Reply at 11). This aspect of Erskine's suppression motion is denied for the same reasons the Court rejected Erskine's challenge to the McGann Affidavit: the facts set forth in Agent Dellapia's affidavit demonstrate probable cause to believe that the requested cell site information would lead to evidence of crimes of racketeering. (*See* Doc. 386-3 at 10-16).

evidence." (internal quotation marks omitted)); *United States v. Sovie*, 122 F.3d 122, 127 (2d Cir. 1997) ("The district court correctly held that the allegations of tampering went to the weight of the evidence rather than to its admissibility."); *Crawford v. Artuz*, 165 F. Supp. 2d 627, 636 (S.D.N.Y. 2001) ("[A]llegations of tampering go only to the weight of the evidence and not its admissibility . . . . Likewise, alleged weakness in the chain of custody and questions about the authenticity of evidence go only to the weight of evidence and not its admissibility." (internal citations omitted)); *United States v. Ida*, No. 96-CR-00430, 1997 WL 122753, *3 (S.D.N.Y. Mar. 18, 1997) ("The tapes are not inadmissible merely because one can conjure up hypothetical possibilities that tampering occurred.").

Indeed, Erskine acknowledges the same in his reply. (Reply at 12 ("authentication typically goes to the weight of the evidence . . . .")). Erskine fails to offer a reason adequately supported in the law for his request for a chain of custody hearing at this juncture in the case. Accordingly, Erskine's motion to require the Government to satisfy chain of custody requirements is denied without prejudice to renewal at trial.

III.   <u>Motion for Bill of Particulars</u>

Erskine moves for a bill of particulars regarding the charges against him of wire fraud and narcotics conspiracy. Federal Rule of Criminal Procedure 7 allows a defendant to seek a bill of particulars, the purpose of which is to give the defendant sufficient information about the nature of the charge to enable him to prepare for trial, avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); *see generally*, 1 Fed. Prac. & Proc. Crim. § 130 (5th ed.). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Parris*, No. 13-CR-00017, 2014 WL 2745332, at *4 (S.D.N.Y. June

15

17, 2014) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)). Further, where the Government "has made sufficient disclosures concerning its evidence and witnesses by other means," a bill of particulars is not necessary. *Id.*; *Chen*, 378 F.3d at 163; *see also United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987) ("Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."). "The important question is whether the information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990), *aff'd sub nom. United States v. Skowronski*, 968 F.2d 242 (2d Cir. 1992). The granting of "a bill of particulars rests within the sound discretion of the district court." *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984).

Local Criminal Rule 16.1 governs, *inter alia*, motions for a bill of particulars. The rule provides, in relevant part, that such motions are barred "unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised in the motion without the intervention of the Court and has been unable to reach agreement." Local Crim. Rule 16.1. Failure to comply, "[b]y itself, . . . is fatal to the motion." *United States v. Dupigny*, No. 18-CR-00528, 2019 WL 2327697, at *2 (S.D.N.Y. May 30, 2019). Though Erskine's counsel filed an affidavit in support of the instant motions (Doc. 386-1), that affidavit does not indicate any attempt at compliance with Local Criminal Rule 16.1. This defect alone is reason enough to deny the motion. *See United States v. Mahabub*, No. 13-CR-00908, 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) (Nathan, J.).

Even if the motion was not procedurally barred, it would be denied on the merits. Contrary to Erskine's contentions, the charges against him in the Indictment are not so general so

16

as to deny him information concerning specific acts that involve him in the narcotics conspiracy and wire fraud. The Indictment specifically sets forth the overt acts alleged to have been committed in furtherance of the conspiracy, as well as the approximate dates of the charged conspiracies, types and quantities of drugs involved, and allegations concerning the wire fraud in connection with COVID-19 relief benefits programs, unemployment, and the fraudulent use of funds related to a 501(c)(3) organization operated by the defendants. Further, the Government has provided extensive discovery to Defendants. (*See* Opp. at 19-20).

"The Second Circuit and courts in the Southern District routinely have denied requests for bills of particulars concerning the 'wheres, whens, and with whoms' of the crime charged." *Parris*, 2014 WL 2745332, at *5 (citing *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001)). "It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts. Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) (internal citations omitted). "The Government will not be compelled through a bill of particulars to disclose the manner in which it will prove the charges or preview its evidence or legal theory." *Facciolo*, 753 F. Supp. at 451. In light of the foregoing, the motion for a bill of particulars is denied.

IV. <u>Motion to Sever</u>

Erskine asks the Court to sever his case from that of his co-defendants on the ground that he will suffer substantial prejudice from a joint trial. He argues that he "risks being unduly prejudiced by standing trial with alleged violent offenders who likely have a tenuous connection to Erskine" while he "is only charged in the Rico [sic] Conspiracy, drug conspiracy, possession

17

of a firearm in connection with the drug conspiracy and a substantive drug charge." (Erskine Br. at 22).

Federal Rule of Criminal Procedure 14(a) provides, in relevant part: "If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials . . . or provide any other relief that justice requires." A defendant who "seeks separate trials carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994). "With conspiracy charges, '[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder.'" *United States v. Lemay*, No. 21-CR-00573, 2022 WL 17363595, at *2 (S.D.N.Y. Dec. 1, 2022) (quoting *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988)). It is beyond cavil that "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998). "Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Moreover, "even the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Id.* (internal quotation marks omitted).

Where, as here, each defendant is alleged to be a member of a single conspiracy, "virtually all of the evidence admitted at a joint trial would be admissible against each separate defendant in a separate trial as acts of his co-conspirators in furtherance of the charged conspiracy." *United States v. Jimenez*, 824 F. Supp. 351, 368 (S.D.N.Y. 1993). Moreover, with respect to Erskine's concern that his co-defendants are charged with substantive violent crimes, including murder and assault with a deadly weapon (Erskine Br. at 22), all of the acts of violence

alleged to have been committed by his co-defendants would be admissible "as proof of the existence and nature of the narcotics [and racketeering] conspirac[ies]." *United States v. Muyet*, 945 F. Supp. 586, 596-97 (S.D.N.Y. 1996) (collecting cases). Because Federal Rule of Criminal Procedure 14 permits a district court to "provide any other relief that justice requires," the rule "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). Even in the rare circumstances where "the risk of prejudice is high," severance is not required, as "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*. at 539.

Erskine has not demonstrated that the fact that he is not charged with a specific violent crime in aid of racketeering will result in substantial prejudice warranting a separate trial. The motion to sever is, accordingly, denied.

V.  Motion for Pretrial Disclosure Deadlines

The motion filed by Senior, which was joined by Defendants and Woods, seeks an order directing the Government to provide Rule 404(b) evidence 60 days before trial and to disclose all *Brady* and *Giglio* immediately. (Doc. 388). Because the Government agrees to produce Rule 404(b) evidence 60 days before trial (*see* Opp. at 24-25), that branch of the motion is granted as unopposed. To the extent the motion seeks immediate production of *Brady* and *Giglio* material, however, that is denied. The Court has already issued orders, verbally and in writing under Federal Rule of Criminal Procedure 5(f), confirming the Government's obligations to disclose *Brady* material to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case; and to disclose *Giglio* material in sufficient time for its effective use at trial. (*See* Docs. 17, 28, 49, 53,

19

97, 127, 161, "Rule 5(f) Orders"). "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence as defined by the Supreme Court in *Agurs* and *Bagley*, as well as the particular circumstances of the case." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). Accordingly, the time for production of *Giglio* and 3500 materials will be set by a pretrial scheduling order which will be entered by the Court at the next pretrial conference when a trial date is set.⁵

## CONCLUSION

For the foregoing reasons, the motions addressed herein are DENIED, except the branch of the motion seeking production of Rule 404(b) evidence 60 days before trial, which is granted as unopposed.

The oral argument scheduled for February 7, 2023 at 3:30 p.m. is, in light of the Court's determinations herein, converted into a pretrial conference.

The Clerk of Court is respectfully directed to terminate the pending motions: Docs. 385, 386, 389, 395.

**SO ORDERED.**

Dated: White Plains, New York
January 11, 2023

_____
Philip M. Halpern
United States District Judge

---

⁵ The branch of the motion which seeks an order directing the Government make inquiries from other states' prosecutors for *Brady* or *Giglio* material is denied, except to the extent they are members of the Government's prosecution team, including "all current or former federal, state, and local prosecutors, law-enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged." *See* Rule 5(f) Orders; *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015).