UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA                :
                                                              :        **OPINION AND ORDER**
v.                                      :
                                                              :        20 CR 626 (PMH)
DONAVAN GILLARD,                        :
                                                              :
             Defendant.                :
-------------------------------------------------------x

Donavan Gillard ("Defendant") moves under 28 U.S.C. § 2255 to vacate the August 24, 2022 amended judgment on the grounds that he was denied his Sixth Amendment right to the effective assistance of counsel rendered in the plea and sentencing contexts by his then-counsel's failure to object to the calculation of his criminal history under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). (Doc. 682). Defendant also moves for a sentence reduction under 18 U.S.C. § 3582(c) because of the retroactive application of Guidelines Amendment 821. (Doc. 894).

For the reasons set forth below, Defendant's motion under 28 U.S.C. § 2255 to vacate his sentence is DENIED. Defendant's motion for a sentence reduction based on Amendment 821 to the Guidelines is GRANTED.

## BACKGROUND

The facts set forth herein are derived from Defendant's motion (Doc. 682) and reply memorandum of law (Doc. 739), the Government's memorandum of law in opposition (Doc. 732, "Opp."), and the record of the underlying criminal proceeding, including the Supplemental Presentence Investigation Report prepared by the Probation Office and filed on January 25, 2024 (Doc. 797, "PSR").

Defendant was a high-ranking leader of a violent "Bloods" gang known as the Untouchable Gorilla Stone Nation ("Gorilla Stone"). (PSR ¶¶ 61-62). The gang operates throughout New York, both inside and outside of prisons, and across other states including Florida and North Carolina. (*Id.* ¶ 33). Members of Gorilla Stone terrorized the communities in which it operated, engaging in acts of violence including murder, attempted murders, robberies, and a slashing. (*Id.* ¶¶ 37, 40). Members of Gorilla Stone were also heavily involved in narcotics trafficking, preying on vulnerable individuals in these communities. (*Id.* ¶¶ 36-38). Members of Gorilla Stone also engaged in wire fraud, including defrauding the COVID-19 unemployment benefits program, ultimately using those funds to further Gorilla Stone's illegal activities. (*Id.* ¶ 55). Defendant was one of its highest-ranking leaders, serving both as the Godfather of a "cave" and the acting Street Leader of the Gorilla Stone organization overall. (*Id.* ¶¶ 61-62).

An indictment first issued in this case on or about November 23, 2020. (Doc. 1). On November 4, 2021, Defendant appeared before this Court and pled guilty to Counts One and Fourteen of the Third Superseding Indictment pursuant to a written plea agreement dated August 21, 2020. (Doc. 382, "Plea Tr."). Count One charged Defendant with participating in a racketeering conspiracy from in or about 2010 to December 2020, in violation of Title 18, United States Code, Section 1962(d). Count Fourteen charged Defendant with using and carrying a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

After placing Defendant under oath, the Court conducted a thorough allocution of him. (*Id.* at 3-5). Among other things, Defendant affirmed that he had attended school through the twelfth grade and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine.

(*Id*. at 4). Defendant further affirmed that his mind was clear and that he understood what was happening at the proceeding. (*Id*.).

Defendant confirmed that he had "enough time and opportunity" to discuss the case with his attorney and that he was satisfied with his attorney's representation of him. (*Id*. at 4-5). The Government and defense counsel likewise represented that they had no doubts as to Defendant's competence to plead guilty. (*Id*. at 5). Accordingly, the Court found that, on the basis of Defendant's responses to the Court's questions, its observations of his demeanor, and the views of counsel, Defendant was fully competent to enter an informed plea. (*Id*.).

Under the terms of the August 21, 2020 plea agreement, among other things, the Government agreed to accept a guilty plea allocution from Defendant to Counts One and Fourteen of the Third Superseding Indictment. (*Id*. at 8-10). Defendant agreed in the plea agreement that the 2010 Conviction for attempted criminal possession of a weapon in the second degree was assigned three criminal history points under U.S.S.G. § 4A1.1(a). Defendant further stipulated and agreed that because he committed the instant offense while under post-release supervision from the 2010 Conviction, an additional two criminal history points were added under U.S.S.G. § 4A1.1(d), resulting in a total of five criminal history points, and a Criminal History Category of III. The parties stipulated to a final offense level of 34 under the Guidelines; five criminal history points; and a Stipulated Guidelines Range of 248 to 295 months' imprisonment, with a mandatory minimum of 60 months' imprisonment on Count Fourteen to be served consecutively to any other sentence imposed. (*See id*. at 19-20).[1] Defendant admitted the forfeiture allegation with respect to Count One of the Indictment and agreed to forfeit a sum of money equal to $50,000. (*Id*. at 21-22).

---

[1] Defendant incorrectly asserts that the Stipulated Guidelines Range in the plea agreement was 188 to 235 months' imprisonment. (Def. Br. at 6).

3

Defendant also stipulated in the plea agreement that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 248 to 295 months' imprisonment" with a mandatory minimum of 60 months' of imprisonment. (*Id*. at 20).

The Court, at the November 4, 2021 hearing, conducted a thorough colloquy pursuant to Federal Rule of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally* Plea Tr.). The Court confirmed that Defendant understood the rights he was giving up by pleading guilty, and that he would be sentenced on the basis of his guilty plea. (*Id*. at 5-8). Defendant acknowledged that he understood he was giving up those rights, except for his right to counsel. (*Id*.). The Government then, at the Court's direction, set forth the elements of the offense to which Defendant was pleading guilty. (*Id*. at 11-12). The Court advised Defendant of the maximum penalties he would face as a result of his guilty plea and confirmed that he understood he faced a five-year mandatory minimum sentence. (*Id*. at 12-14).

The Court confirmed that Defendant understood that, when imposing a sentence, the Court would consider the Guidelines along with the factors set forth in 18 U.S.C. § 3553(a), and could impose a sentence that was higher or lower than that called for by the Guidelines. (*Id*. at 15-17). Defendant confirmed that he understood that he would not be permitted to withdraw his guilty plea if the sentence differed from what he expected or from the Stipulated Guidelines Range set forth in the plea agreement. (*Id*. at 17).

The Court next confirmed that Defendant had read the plea agreement, had discussed "every aspect of it" with his attorney, and understood it fully. (*Id*. at 17-18). Defendant swore that

4

apart from the plea agreement, no one had made him any promises or used any threats, force, or coercion to induce him to plead guilty or to enter into the plea agreement. (*Id*. at 19). The Court further confirmed that Defendant understood that he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as his sentence was within or below the Stipulated Guidelines Range. (*Id*. at 20).

The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Defendant's plea. (*Id*. at 27). The Government's proof included:

> First, extractions from the defendant's cell phone showing that the defendant trafficked marijuana with members of Gorilla Stone, sold firearms with them, and also participated in unemployment insurance fraud schemes with fellow gang members; Second, recorded calls from wiretaps of high-level Gorilla Stone leaders which would show that the defendant himself had a high-ranking position in a Gorilla Stone subset, or Cave; Third, social media evidence which would show the highly organized nature of Gorilla Stone and the rules that Gorilla Stone members abided by, including that members had to be armed; Fourth, cooperator testimony which would establish that members of Gorilla Stone were armed, they sold drugs, and that the defendant himself was armed when selling narcotics. This testimony would also establish, your Honor, that the defendant pushed the button for ordering an act of violence which led to a shooting in Brooklyn; Fifth, photographs from the defendant's cell phone and other seized cell phones showing that the defendant and other members of the gang stored firearms in close proximity to narcotics that they sold.

(*Id*. at 23-24).

Defendant affirmed that he heard the Government's summary of its proof, and that it was substantially accurate. (*Id*. at 24, 25). Defendant then made a factual allocution and stated that he was a part of a gang from about 2010 to 2020; that he possessed and carried a firearm in drug trafficking; and that he sold marijuana. (*Id*. at 25). Defendant also confirmed, in response to questions from the Court, that he "was a leader" in Gorilla Stone; that he "take[s] full responsibility

5

for the shooting in Brooklyn" because the crime was committed "to please [him] with – furthering the gang"; and that he obtained personal identification information from another person to file for unemployment benefits and collected the checks once approved. (*Id*. at 25-31).

The Court found that Defendant had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his plea was supported by an independent factual basis. (*Id*. at 33-34). The Court, accordingly, accepted the guilty plea and Defendant was remanded. (*Id*. at 33-35).

On August 17, 2022, Defendant appeared before this Court for sentencing. (Doc. 664-2, "Sent. Tr."). The Court found that, consistent with the plea agreement and the calculation set forth in the PSR, Defendant's Guidelines Range was calculated at 188 months to 235 months of imprisonment for Count One, with a mandatory and consecutive term of five years' imprisonment for Count Fourteen, for a total combined Guidelines Range of 248 to 295 months of imprisonment. (*Id*. at 4-8). Defendant argued that his background, childhood trauma, his employment history, and the circumstances of the crime warranted the imposition of a sentence on the lower end of, or below, the Guidelines. (*Id*. at 18-27). The Court considered Defendant's difficult and traumatic childhood, history of drug use, mental health condition, employment background, criminal history, family ties, and the conditions in jail especially in light of the COVID-19 pandemic. (*Id*. at 33-44). The Court balanced mitigating and aggravating factors, the need to promote respect for the law, the need for deterrence, and the need to avoid unwarranted sentencing disparities. (*Id*.). After considering the nature and circumstances of the offense, and the history and characteristics of Defendant, the Court sentenced Defendant to the bottom of the Guidelines range—a total term of 248 months' imprisonment to be followed by five years of supervised release, as follows: 188 months on Count One of the Indictment and 60 months on Count Fourteen of the Indictment to

run consecutively to the sentence imposed on Count One, to be followed by five years of supervised release on each of Count One and Count Fourteen to run concurrently. (*Id.*). Defendant's projected release date is September 21, 2038. (PSR at 1).

The judgment of conviction was entered on August 18, 2022. (Doc. 462). Defendant did not file a direct appeal. On August 19, 2022, Defendant filed a *pro se* motion seeking compassionate release and requesting the appointment of counsel. (Doc. 464). On September 12, 2022, the Court appointed Richard Palma as Defendant's attorney pursuant to the Criminal Justice Act for purposes of Defendant's motion to modify his term of imprisonment. (Doc. 479). Mr. Palma sought and obtained extensions of time to file a Section 2255 motion, and ultimately filed the motion on July 28, 2023. (Doc. 682). The Government filed opposition on September 22, 2023. (Doc. 732). Defendant's reply was filed on October 2, 2023. (Doc. 739). In light of the filing of the Supplemental PSR, and because Defendant raised the issue of points under USSG § 4A1.1(d) and retroactive application of Amendment 821, on April 24, 2024, the Court construed the reference as a motion under 18 U.S.C. § 3582(c)(2) and directed the parties to file supplemental submissions on that issue. (Doc. 861). The Government filed its submission on May 8, 2024 (Doc. 871) and Defendant's submission was filed on May 22, 2024 (Doc. 894).

## STANDARD OF REVIEW

I. Relief Under 28 U.S.C. § 2255

A prisoner in federal custody may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the

finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted).

"[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Sanders v. United States*, 1 F. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *United States v. Brickhouse*, No. 09-CR-01118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017). Further, to successfully challenge a guilty plea conviction under Federal Rule of Criminal Procedure 11, "the petitioner must demonstrate that the violation was prejudicial—where the error was not preserved, this requires the petitioner to show that 'the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)).

A hearing on a § 2255 petition is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[A] hearing is not required where the petitioner's allegations are 'vague, conclusory, or palpably incredible.'" *Brickhouse*, 2017 WL 1049509, at *4 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

    II.    <u>Relief Under Amendment 821</u>

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Defendant seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) through the retroactive application of Guidelines Amendment 821, which took effect on November 1, 2023. "Amendment 821 to the Sentencing Guidelines went into effect on November 1, 2023, and applies retroactively." *United States v. Budovsky*, No. 13-CR-00368, 2024 WL 1676337, at *2 (S.D.N.Y. Apr. 18, 2024) (citation omitted). Amendment 821 adjusted the calculation of criminal history points, commonly referred to as status points, under § 4A1.1 of the Guidelines. *United States v. Ross*, No. 15-CR-00095, 2024 WL 149130, at *1 (S.D.N.Y. Jan. 12, 2024).

Section 3582(c)(2), which governs Defendant's motion, "establishes a two-step inquiry. A court must first determine that a reduction is consistent with Section 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010). Under application note 1(A) to Section 1B1.10: "Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance)."

Where a defendant qualifies, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.10 app. note 1(B)(i); *see also* U.S.S.G.

§1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). Those factors include, among others: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

## ANALYSIS

I. The Section 2255 Motion

Defendant seeks relief under 28 U.S.C. § 2255(b) on the grounds that his prior counsel was constitutionally ineffective because he advised Defendant to enter a plea agreement which mischaracterized Defendant's prior conviction.

The merits of ineffective assistance of counsel claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Defendant to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-90. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id*. at 689, "and it is [Defendant's] burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy,'" *United States v.*

*Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

"'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-02175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (alteration in original)). Prejudice in this case requires Defendant to show that "but for his attorney's claimed ineffectiveness, he would have gone to trial and been acquitted, or that he would have gotten a sentence lower than the one he actually received." *Davis v. United States*, No. 18-CV-01308, 2019 WL 3429509, at *5 (S.D.N.Y. July 30, 2019).

Defendant argues that his prior counsel was not the attorney he sought to retain.[2] He also complains that counsel did not visit him more than three times in the Westchester County Jail nor more than once to discuss the proposed plea agreement. Further, he argues that counsel informed Defendant that the proposed plea agreement was a nonnegotiable "take it or leave it" proposition, and that if Defendant was unwilling to contest all of the Government's allegations at a trial of all the charges, he could not contest any of the conduct the Government required him to admit in the proposed plea agreement. (Def. Br. at 24). Defendant bases his ineffective assistance of counsel claim on prior counsel's failure to object to the calculation of his criminal history under the Guidelines with respect to his 2010 conviction for attempted criminal possession of a weapon in the second degree, which arose from a May 4, 2009 shooting (the "2010 Conviction").

---

[2] Defendant explains that his then-girlfriend sought attorney Paul King to represent Defendant in this proceeding but that Mr. Magwood instead entered an appearance on Defendant's behalf, and King was later suspended from practicing law. To the extent Defendant suggests that the circumstances of the retention constitute ineffective assistance of counsel, those claims are belied by Defendant's filings on this motion that King explained from the beginning that Magwood would be working on the case (Def. Br. at 4-5); that Magwood appeared in Court on his behalf and visited him in jail (Doc. 682-3 ¶¶ 9-12); and by Defendant's sworn statements at his plea hearing that he had an opportunity to discuss the case with his counsel and was satisfied with his attorney's representation of him (Plea Tr. at 4-5).

11

Defendant argues that the 2010 Conviction was a "prior sentence" as defined in U.S.S.G. § 4A1.2(a)(1), as clarified by Application Note 1 to that section and the provisions of U.S.S.G. § 1B1.3. (Def. Br. at 24). Specifically, a "prior sentence" is one previously imposed for conduct not part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense. (*Id*. at 24-25). Defendant's 2010 Conviction was for the discharge of a handgun on March 25, 2009 which he argues was conduct "owed to his membership in the ABG gang." (*Id*. at 25; Doc. 682-5). Defendant claims that the ABG gang was a subset of the Gorilla Stone gang and therefore all of his unlawful activity was related to the charged conspiracy in this case and should not have been treated as a prior sentence. (Doc. 682-2 ¶ 3).

Defendant, under oath, swore that his gang membership spanned from about 2010 to 2020. (Plea Tr. at 25). He pled guilty to participating in a racketeering conspiracy beginning in 2010 and made no mention of any racketeering offense that pre-dated 2010. "A defendant's statements at his plea allocution 'carry a strong presumption of verity.'" *Rosa v. United States*, 170 F. Supp. 2d 388, 402 (S.D.N.Y. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

The 2010 Conviction occurred prior to all of the predicate acts underlying Count One of the Indictment, which, as stipulated in the plea agreement, included: 1) a conspiracy to distribute marijuana from 2010 through December 2020: 2) an attempted murder in aid of racketeering on August 8, 2018; and 3) a conspiracy to commit wire fraud from 2010 through December 2020. Even if the 2010 Conviction could be considered part of the instant offense, however, it would still be properly assigned criminal history points. Count One of the Indictment is covered by U.S.S.G.

§ 2E1.1. Pursuant to Application Note 4 of Section 2E1.1, "[c]ertain conduct may be charged in the count of conviction as part of a 'pattern of racketeering activity' even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense." "U.S.S.G. § 2E1.1 Application Note 4 is authoritative in this context." *United States v. Mizell*, 671 F. App'x 826, 828 (2d Cir. 2016). Thus, even if the 2010 Conviction was part of the instant offense, it would have properly been assigned criminal history points. The failure of counsel to argue otherwise cannot be considered ineffective assistance of counsel. *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (the "failure to make a meritless argument does not rise to the level of ineffective assistance.").

With respect to the second prong of the *Strickland* analysis, Defendant does not claim that he would have gone to trial but for the many errors to which he now points. Defendant, rather, states that he "may well have still elected to enter a plea agreement and plead guilty or [ ] plead[ed] guilty without an agreement." (Doc. 682-3 ¶ 16). This wholly conclusory allegation is insufficient to demonstrate prejudice with respect to the decision to plead guilty; and, accordingly, his ineffective assistance of counsel claims must be denied. *Tineo v. United States*, 977 F. Supp. 245, 259 (S.D.N.Y. 1996) ("Because Petitioner has failed to illustrate by a reasonable probability that, but for counsel's failure to object to the alleged Rule 11(c)(1) violation, he would not have pled guilty, this ground does not provide a basis for finding ineffective assistance of counsel.").

Under these circumstances, and as set forth above, the record in this case is more than sufficient and uncontroverted to resolve the conclusory factual issues raised by Defendant without a hearing and fully supports a denial of the motion. *See United States v. Martinez*, No. 09-CR-1022, 2014 WL 7146846, at *8 (S.D.N.Y. Dec. 12, 2014) ("Courts have repeatedly rejected such

self-serving, uncorroborated statements that contradict statements during a colloquy as a basis to challenge a sentence.").

II.     The Sentence Modification Motion – Amendment 821

Defendant, in reply, referenced U.S.S.G. § 4A1.1(d) (*see* Doc. 739 at 4) which the Court construed as a motion made pursuant to 18 U.S.C. § 3582(c)(2). (Doc. 861). As noted by Defendant, the two criminal history points he received for having committed the instant offense while on parole would no longer apply pursuant to the November 2023 amended Guidelines, such that he would have been in Criminal History Category II; and be subject to a lower Guidelines range of 168 to 210 months of imprisonment on Count One of the Indictment. The Probation Department is in accord, concluding Defendant is eligible for a sentence reduction based on the "status points" enhancement. (*See* PSR at 2-3).

As set forth *supra*, the statutory scheme requires that a court determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized, determine the amended guideline range that would have been applicable to the defendant had the amendment been in effect at the time of sentencing, and consider whether the § 3553(a) factors support the reduction. *See Dillon*, 560 U.S. at 826-827; *United States v. Johnson*, No. 17-CR-00212, 2024 WL 3835084, at *1 (S.D.N.Y. Aug. 15, 2024).

No side disputes that Defendant is eligible for a status point recalculation and a sentence reduction. (PSR at 2-3; Doc. 871 at 2; Doc. 894). Under Amendment 821, Defendant would only have three criminal history points and would not have any additional status points for having committed the offense while under a criminal justice sentence. Therefore, Defendant's Total Offense Level remains 34, but his Criminal History Category is reduced to II; and the applicable Sentencing Guideline Range is 168 to 210 months' imprisonment on Count One of the Indictment,

14

plus a mandatory and consecutive 60 months on Count Fourteen of the Indictment, for a combined amended Guidelines range of 228 to 270 months' imprisonment.

Having determined that Defendant is eligible for a sentence modification, the extent of the reduction authorized, and the amended Guidelines range applicable holding all else constant, the Court must consider the § 3553(a) factors and determine, in its discretion, whether a reduction is warranted. *See Dillon*, 560 U.S. at 827. The Court may also consider Defendant's conduct since his sentence. *See Johnson*, 2024 WL 3835084, at *2 (citing U.S.S.G. § 1B1.10, cmt. n. 1(B)(iii)).

The nature and circumstances of the offense was extremely serious, involving Defendant's direct and active participation in a violent gang that terrorized local communities, as a high-ranking member and potential successor to the second-in-command of Gorilla Stone. The seriousness of the offense -- involving attempted murder, distribution of tremendous amounts of marijuana, defrauding the COVID-19 unemployment benefits program, and possessing a firearm in relation to drug trafficking -- simply cannot be overstated. Further, Gorilla Stone developed and operated according to its own code of conduct, in which its core principals were in direct contravention of innumerable laws. The Court took into account, and continues to take into account, the trauma that Defendant experienced as a child which was life altering, the lack of youthful guidance, his mental and emotional condition, and his prior drug and alcohol dependence, in fashioning an appropriate sentence. The Court also takes into account Defendant's productive use of the time he has so far served. Defendant has addressed his substance abuse issues. He completed Cognitive-Behavioral Therapy (CBT), a 12- week group therapy program designed "to address criminal lifestyles and provides skill-building opportunities in the areas of rational thinking, communication skills, and institution/community adjustment." (Doc. 894 at 4). He has addressed his academic deficiency, passing exams to earn a GED. He completed BOP's Phase 1 parenting which teaches techniques

15

for parenting from prison and for dealing with its inevitable challenges. He also volunteered for BOP's UNICOR program, factory work making mason jar lids for which BOP offers its highest compensation. (*Id*. at 5).

The Court's decision to sentence the defendant to a term at the bottom of the then-applicable Guidelines range was appropriate. However, balancing the § 3553(a) factors including the nature and circumstances of the offense, the need to promote respect for the law, and the need to afford adequate deterrence, with the significance of a 228-month sentence and Defendant's conduct since sentencing, the Court finds that a reduction of Defendant's sentence from 248 months to 228 months—at the bottom of the now-applicable Guidelines range—is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. The question is whether, if the bottom of the Guidelines on the sentencing date was 168 months instead of 188 months, would the Court have imposed 168 months on Count One of the Indictment instead of 188 months. The answer is unquestionably yes, and the Court sees no valid reason not to modify the sentence imposed on Count One to 168 months. All other components of the sentence remain as originally imposed.

The Court applauds Defendant's efforts at rehabilitation and encourages him to continue in them.

Accordingly, this motion is granted and Defendant's sentence is reduced to 228 months. An Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) will be docketed separately.

**<u>CONCLUSION</u>**

Based on the foregoing, Defendant's motion under 28 U.S.C. § 2255 to vacate his sentence and for a hearing is DENIED. Defendant's motion for a sentence reduction based on Amendment 821 to the Sentencing Guidelines is GRANTED.

The Clerk of the Court is respectfully directed to terminate the pending motions (Doc. 682; Doc. 894).

Dated: White Plains, New York
    September 30, 2024

SO ORDERED:

_____
Philip M. Halpern
United States District Judge